[Cite as *State v. Parker*, 193 Ohio App.3d 506, 2011-Ohio-1418.]

IN THE COURT OF APPEALS OF CLARK COUNTY, OHIO

The STATE OF OHIO,                 :

    Appellee,                      :     C.A. CASE NO. 10CA0074

vs.                                :     T.C. CASE NO. 10CR0039

PARKER,                            :     (Criminal Appeal from
                                             Common Pleas Court)
    Appellant.                     :

. . . . . . . . .

O P I N I O N

Rendered on the 25th day of March, 2011.

. . . . . . . . .

Andrew R. Picek, Assistant Prosecuting Attorney, for appellee.

Richard E. Mayhall, for appellant.

. . . . . . . . .

GRADY, Presiding Judge.

{¶ 1} Defendant, Anthony Parker, appeals from his conviction and sentence for sexual battery under R.C. 2907.03(A)(7), which provides:

{¶ 2} "No person shall engage in sexual conduct with another, not the spouse of the offender, when * * * [t]he offender is a teacher, administrator, coach, or other person in authority employed by or serving in a school for which the state board of education prescribes minimum standards pursuant to division (D)

of section 3301.07 of the Revised Code, the other person is enrolled in or attends that school, and the offender is not enrolled in and does not attend that school."

{¶ 3} Unless the victim is less than 13 years of age, a violation of R.C. 2907.03(A) is a felony of the third degree, R.C. 2907.03(B), and it is punishable by a prison term of one, two, three, four, or five years.

{¶ 4} In November 2009, Parker, who was a teacher at Northeastern High School in Clark County, began to sexually seduce one of his students, a 16-year-old female.

{¶ 5} Instant messaging chats between Parker and his victim recovered from Parker's computer demonstrate that over a period of several months Parker emotionally groomed and manipulated the victim in order to engage in sexual activity with her. Although the victim was apprehensive about engaging in sexual conduct, Parker used promises of commitment to overcome her reluctance. Parker was well aware of the wrongfulness of his conduct, telling the victim: "By the way, you know I can go to prison if we have sex. But damn, it would be worth it."

{¶ 6} On January 1 and 9, 2010, Parker met the victim in the parking lot of the Upper Valley Mall in Springfield, and from there Parker drove the victim to a motel in Dayton, where on both occasions Parker inserted his finger in the victim's vagina and

performed cunnilingus on her. The victim firmly believed that she and Parker were in love and would eventually be together, even if he went to prison. When police interviewed Parker on January 11, 2010, Parker immediately confessed to engaging in sexual conduct with the victim on two separate occasions.

{¶ 7} Parker was indicted on four counts of sexual battery in violation of R.C. 2907.03(A)(7). Parker surrendered his Ohio teaching license and terminated all contact with the victim. Parker entered guilty pleas to all four charges and was sentenced to consecutive prison terms totaling 15 years. The court also classified Parker a Tier III sex offender.

{¶ 8} Parker appealed to this court. He challenges his sentence on multiple grounds.

First Assignment of Error

{¶ 9} "The consecutive sentences imposed on appellant are contrary to law."

{¶ 10} The requirement in R.C. 2929.14(E)(4) that the trial court make certain findings before imposing consecutive sentences was found unconstitutional and severed from that statute in *State v. Foster,* 109 Ohio St.3d 1, 2006-Ohio-856. Parker argues that *Foster*'s holding was effectively overruled by *Oregon v. Ice* (2009), 555 U.S. 160, 129 S.Ct. 711, 172 L.Ed.2d 517, and that the judicial-findings requirement of R.C. 2929.14(E)(4) has therefore

been revived.

{¶ 11} In *State v. Hodge*, ___ Ohio St.3d ___, 2010-Ohio-6320, the Ohio Supreme Court held that *Oregon v. Ice* does not revive R.C. 2929.14(E)(4). Id. at paragraph two of the syllabus. See also *State v. Ferguson*, Montgomery App. No. 23857, 2011-Ohio-752.

{¶ 12} Parker's first assignment of error is overruled.

Second Assignment of Error

{¶ 13} "The sentence of the trial court is contrary to law because it fails to reflect any consideration of the purposes and principles of felony sentencing contained in R.C. 2929.11 or the seriousness and recidivism factors of R.C. 2929.12."

Third Assignment of Error

{¶ 14} "The trial court erred and abused its discretion when it imposed more-than-minimum, maximum and consecutive sentences."

{¶ 15} In his second assignment of error, Parker argues that the trial court's sentence is contrary to law because the court failed to consider the principles and purposes of felony sentencing in R.C. 2929.11 and the seriousness and recidivism factors in R.C. 2929.12. In his third assignment of error, Parker argues that, because he is a first-time offender, the trial court abused its discretion in imposing more than minimum sentences, instead imposing maximum sentences and consecutive sentences. In other words, the trial court abused its discretion in imposing an overly

harsh 15-year aggregate sentence that is not supported by the record.

{¶ 16} In *State v. Barker*, Montgomery App. No. 22779, 2009-Ohio-3511, at ¶36-37, we wrote:

{¶ 17} " 'The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum[,] consecutive, or more than minimum sentences. *State v. Foster*, 109 Ohio St.3d 1, 845 N.E.2d 470, 2006-Ohio-856, at paragraph 7 of the syllabus. Nevertheless, in exercising its discretion the trial court must consider the statutory policies that apply to every felony offense, including those set out in R.C. 2929.11 and 2929.12. *State v. Mathis,* 109 Ohio St.3d 54, 846 11 N.E.2d 1, 2006-Ohio-855, at ¶37.

{¶ 18} " 'When reviewing felony sentences, an appellate court must first determine whether the sentencing court complied with all applicable rules and statutes in imposing the sentence, including R.C. 2929.11 and 2929.12, in order to find whether the sentence is contrary to law. *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124. If the sentence is not clearly and convincingly contrary to law, the trial court's decision in imposing the term of imprisonment must be reviewed under an abuse of discretion standard. *Id.' "*

{¶ 19} Parker contends that the trial court failed to apply the principles and purposes of felony sentencing in R.C. 2929.11 and the seriousness and recidivism factors in R.C. 2929.12. In *State v. Miller*, Clark App. No. 09CA28, 2010-Ohio-2138, at ¶43, we wrote:

{¶ 20} "Although the trial court did not specifically cite either statute during the sentencing hearing, its judgment entry stated that it had 'considered the record, oral statements, any victim impact statement and presentence report prepared, as well as the principles and purposes of sentencing under Ohio Revised Code Section 2929.11, and [had] balanced the seriousness and recidivism factors [under] Ohio Revised Code Section 2929.12.' Because a trial court speaks only through its journal entries, Miller's sentence is not contrary to law merely because the trial court failed to cite either statute during the sentencing hearing. *State v. Cave*, Clark App. No. 09-CA-6, 2010-Ohio-1237, ¶10.

{¶ 21} " 'Furthermore, even if there is no specific mention of those statutes in the record, "it is presumed that the trial court gave proper consideration to those statutes." ' Id., quoting *Kalish*, supra, at n.4. We note too that Miller's five-year sentence is within the statutory range for a third-degree felony. See R.C. 2929.14(A)(3). Therefore, we have no basis for concluding that the sentence is contrary to law."

{¶ 22} In its journalized judgment entry of conviction, the

trial court indicated that it had considered the record, oral statements by counsel and defendant, the presentence investigation report, the principles and purposes of felony sentencing, R.C. 2929.11, and the seriousness and recidivism factors in R.C. 2929.12. The court also informed Parker during sentencing about postrelease-control requirements. The court complied with the applicable rules and statutes in imposing its sentence. Furthermore, the two-, three-, and five-year sentences the trial court imposed on the various counts of sexual battery, while the maximum sentence on some counts, are all nevertheless within the authorized range of available punishments for felonies of the third degree. R.C. 2907.03(B); 2929.14(A)(3). The court ordered all of the prison terms served consecutively, for a total sentence of 15 years. We have no basis for concluding that Parker's sentence is clearly and convincingly contrary to law. *Kalish*. The further issue is whether the sentences the court imposed are an abuse of discretion. *Id*. We will consider that issue together with Parker's third assignment of error.

{¶ 23} In his third assignment of error, Parker argues that his 15-year sentence is unduly harsh and not supported by the record and therefore constitutes an abuse of the trial court's discretion. Parker points to a number of different facts and circumstances that demonstrate that his offenses are not aggravated or a more serious

form of the offense concerned. Parker asserts that had he not been a teacher at the same school the victim attended, his conduct with this 16-year-old victim, while perhaps morally repugnant, would not constitute a criminal offense. Parker argues that when all of the facts and circumstances of the case are viewed in their totality, the record does not justify the 15-year sentence the trial court imposed, which was unreasonable and an abuse of discretion.

{¶ 24} "'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary or unconscionable. *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 87, 19 OBR 123, 126, 482 N.E.2d 1248, 1252. It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary.

{¶ 25} "A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue *de novo,* would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result." *AAAA Ents., Inc. v. River Place Community Redevelopment* (1990), 50 Ohio St.3d 157, 161.

{¶ 26} R.C. 2929.11 provides:

{¶ 27} "(A) A court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing. The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender. To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both.

{¶ 28} "(B) A sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing set forth in division (A) of this section, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders."

{¶ 29} During the sentencing hearing the prosecutor told the trial court that his conversations with the victim reveal that she is in love with Parker and believes that, regardless of the sentence imposed, they will wait for each other, so that after Parker serves his sentence they can be together.  The prosecutor argued that in order to protect the victim from any further emotional harm at the hands of Parker, give her closure, and allow her to recover from this and move on with her life, the court's sentence has to "crush

that victim's hope."  Specifically, the prosecutor stated:

{¶ 30} "You could give a short prison sentence in this case, and you could fuel her fantasy that they are going to be together.

{¶ 31} "A prison sentence of two to three years gives her some hope that, 'Hey, look I'll be eighteen, nineteen.  I can be with him.  We can be together.  He loves me.  He's going to be with me.  He's told me all those things.  He's going to wait for me.'

{¶ 32} "And she won't get the closure, the emotional closure to get on with her life.  You can see a short prison sentence having negative effects on her future, healthy relationships.

{¶ 33} "You can see a situation where she would be like, she wouldn't date other boys her age, not go to prom, not engage in normal teenage dating patterns because she is Parker's girl, because she's waiting for Parker and that they're going to be together.

{¶ 34} "You can also see where a short prison sentence would cause her to make significant life-changing decisions based on her belief or her fantasy that they are going to be together.

{¶ 35} "An example would be like, 'I'm not going to go to an out-of-state college cause I need to be close to the prison or close to Ohio so I can be with him.  Hey, I'm not going to do this or that in my life because I'm going to be with Parker.'

{¶ 36} "This may sound harsh but part of protecting the victim,

and part of protecting the community at large, is that your sentence has to crush that victim's hope. Your sentence has to crush that fantasy that they are going to be together so she can have some closure in her life and she can move on."

{¶ 37} At Parker's sentencing the trial court addressed the victim, who had written a letter to the court on behalf of Parker, reaffirming that she is in love with Parker, that she was a willing participant in this sexual activity, and that Parker did not compel her to do anything she didn't want to do. The court told the victim:

{¶ 38} "Everything that you wrote, I truly believe that it came from your heart and that you feel the way you feel about the defendant and about the situation; but what I would hope that you understand through this, this kind of ties into what the prosecutor was saying about the emotional and psychological manipulation and harm done here is that when you're sixteen and seventeen years old – And again, I think you're very mature.

{¶ 39} "I'm not saying that you are not mature and not thinking for yourself, but when you're young and you're in high school and you see somebody that's an adult that's showing interest in you and you're looking at this adult and they are in a place where you are eventually striving to be, in other words, you're striving to become an adult.

{¶ 40} "You want to have a job to be able to make money and have a car and have freedoms to do certain things, and you see this person taking an interest in you, it's only natural that you're going to be sort of taken in by that.

{¶ 41} "But I think as time goes by, in the next three, five, ten years, fifteen years, you're going to look back and say, you know – and this is no disrespect to the defendant; I don't mean it that way – But you're going to look back and say, 'This guy was really nothing special or nothing unique he just happened to be in a situation.

{¶ 42} " 'He was an adult and he was showing me attention, and I was young and I was infatuated by that.'  I think as time goes by you're going to see that there was nothing really unique or special about him to you.

{¶ 43} "*       *       *

{¶ 44} "As tough as this is for you to hear, it seems to me that he was just saying all the things to you that you wanted to hear so that he could get what he wanted, but he didn't mean those things and that he used you and manipulated you.

{¶ 45} "So with that kind of backdrop and as a perspective, the Ohio General Assembly has made these offense felonies of the third degree, which are very serious offenses.

{¶ 46} "There   is   no   language   in   the   statute   or   nothing

mitigating in the statute that says, well, if the student is in love with the teacher, or if the student feels like the teacher didn't make her do anything she didn't want to do, then it should be less serious.

{¶ 47} "No.  The whole reason for the crime is that the adult is in a position to know that he cannot manipulate a child into engaging in this kind of behavior.  That's why it's a crime.  Because he's an adult and he knows.

{¶ 48} "*      *      *

{¶ 49} "And that's exactly why the legislature has had to enact a criminal statute to protect these young people because they don't have the perspective to protect themselves."

{¶ 50} In imposing sentence on the four counts of sexual battery, the trial court imposed maximum five-year prison terms on two counts, a three-year term on one count, and a two-year term on the other count, and ran all of the prison terms consecutively for a total sentence of 15 years.  The trial court stated its reasons as follows:

{¶ 51} "The legislature has directed the Court to consider punishment of the offender and protection of the community and when there is a minor involved – Not that I don't take protection of the community serious in all cases – but when there is a minor involved my responsibility in that area, I believe, is heightened.

{¶ 52} "The prosecutor is exactly right; I don't want there to be any glimmer of hope after today that somebody is going to wait for somebody.  I want there to be finality today.  I want it to be over with.  I want the harm to stop.

{¶ 53} "I don't want Mr. Parker to harm any other children, and I don't want any other teachers in this community to think that they can engage in this behavior and walk away with a light sentence.

{¶ 54} "I agree with the prosecutor; I think the emotional and psychological conduct here is even greater than the physical acts. While the physical acts are horrific, I do think the psychological and emotional aspect of the crime is even greater."

{¶ 55} We begin our analysis by emphasizing that we in no way condone or wish to minimize the seriousness of Parker's conduct in this case.  To be sure, Parker's conduct constitutes a serious criminal offense.  As a teacher, Parker held a position of trust and authority over his students, and he misused that position of trust and authority to gain access to a vulnerable adolescent victim.  The vulnerability that adolescents and children have when taken advantage of by adults who are in a position of trust and authority over them is plainly the reason why the General Assembly saw fit to make this particular offense a serious one, a felony of the third degree.

{¶ 56} Furthermore, an examination of the instant-messaging chats between Parker and the victim, which authorities obtained when they examined Parker's computer, reveals that over a period of months Parker emotionally groomed and manipulated this victim, seducing her so she would fall in love with him and believe that someday they would be together, in order to get the victim to submit to his emotional control and prepare her for what Parker wanted to do, engage in sexual activity with her.  Additionally, we note that Parker was well aware of the wrongfulness of his conduct with this victim, telling her at one point: "By the way, you know I can go to prison if we have sex.  But damn, it would be worth it."

{¶ 57} Parker's conduct reasonably supports imposition of a sentence within the upper ranges of R.C. 2929.14(A)(3), which authorizes sentences of one, two, three, four, or five years for third-degree felony offenses.  However, and with that said, the principles and purposes of felony sentencing in R.C. 2929.11 nevertheless require the trial court in imposing its sentence to also consider, among other things, rehabilitating the offender. Furthermore, a sentence imposed for a felony shall be consistent with sentences imposed for similar crimes committed by similar offenders.  Id.

{¶ 58} In his fourth assignment of error, Parker argues that his 15-year sentence is contrary to law because it is inconsistent

with sentences imposed for similar crimes committed by similar offenders. In support of that claim, Parker has included in his appellate brief statistics that demonstrate that in the only case similar to this one in Clark County in recent times, *State v. Mattern*, Clark C.P. No. 00CR554, the defendant teacher received a three-year sentence after pleading guilty to three counts of sexual battery. Parker further argues that his internet research discloses that in 30 cases similar to this one across Ohio since 2007, the average sentence length is 2.7 years, with only two cases involving sentences that exceed five years. One, an eight-year sentence, involved 16 counts of sexual battery. The other one, a nine-year sentence, involved three separate victims. Parker's point, of course, is that his 15-year sentence is grossly disproportionate to sentences imposed upon similar offenders for similar crimes.

{¶ 59} In deciding this appeal, we cannot consider Parker's statistics because they were not presented to the trial court and are not a part of the record in this appeal. *State v. Ishmail* (1978), 54 Ohio St.2d 402. Nevertheless, we are mindful that the Ohio Supreme Court has recognized that the General Assembly's intent in enacting the sentencing laws in Senate Bill 2 was to introduce consistency and proportionality into felony sentencing. *Foster* at ¶34. Furthermore, both the Ohio Supreme Court and this

court have stated that consecutive sentences should be reserved for the worst offenses and offenders. *State v. Comer*, 99 Ohio St.3d 463, 2003-Ohio-4165, at ¶21; *State v. Myers*, 159 Ohio App.3d 584, 2005-Ohio-447. This case simply does not involve the worst form of the offense or the worst offender.

{¶ 60} Parker is a 36-year-old first-time offender with no prior criminal record of any kind. This case involves two separate incidents of consensual sexual activity with but one victim, who was of the age of consent at the time these offenses took place. There was no force, violence, physical harm, use of drugs or alcohol to impair judgment, and no exploitation of any mental or physical impairment. Although the victim's stepmother claimed in her victim-impact statement that the victim suffers from emotional and psychological problems as a result of Parker's conduct, there was no evidence in that regard.

{¶ 61} We additionally note that prior to engaging in this conduct Parker had always led a law-abiding life, earning awards as an outstanding teacher. Parker is married and has two special-needs children. When questioned by police about his conduct with this victim, Parker immediately confessed to engaging in sexual activity, digital penetration and cunnilingus, with this victim on two separate occasions, and took full responsibility for his actions. Parker surrendered his teaching license and ceased

further contact with this victim, making recidivism unlikely, and expressed genuine remorse for his conduct at sentencing.

{¶ 62} The trial court's own statement as to its reasons for the sentence it imposed discloses that the court imposed a 15-year sentence to eliminate any hope this victim had that she might wait for Parker while he served his sentence and after his release have a future with him. That is not a proper consideration or legitimate basis for the court's lengthy sentence in view of the fact that the victim was already of the legal age of consent at the time of this offense, and Parker had surrendered his Ohio teaching license after being charged. Because Parker was no longer a teacher, any future relationship he might have with this victim would not be illegal.

{¶ 63} By sentencing this 36-year-old first-time offender to 15 years in prison, the trial court failed to reasonably consider the concept of rehabilitation. *State v. Culp* (May 25, 2001), Champaign App. No. 2000CA17. Compared to this 15-year sentence, we note that many types of homicide offenses carry a lesser maximum penalty and that a murder conviction would result in an indefinite sentence of only 15 years to life. Simply put, there is no justification in this record for consecutive sentences on all of the counts, resulting in a 15-year sentence that is unreasonable and an abuse of the trial court's discretion. Parker's second and

third assignments of error are sustained.

Fourth Assignment of Error

{¶ 64} "Because the sentence imposed by the trial court is disproportionate and inconsistent, it is contrary to law and constitutes plain error."

{¶ 65} Parker argues that because his 15-year sentence is grossly disproportionate to and inconsistent with the sentences imposed on similar offenders for similar crimes, it violates R.C. 2929.11(B) and is contrary to law.

{¶ 66} With respect to Parker's contention that the trial court violated R.C. 2929.11(B) by failing to impose a sentence that was consistent with sentences imposed for similar crimes committed by similar offenders, we addressed that argument in *State v. Miller,* Clark App. No. 09CA28, 2010-Ohio-2138.

{¶ 67} We have addressed the issue of sentencing consistency before, recognizing that trial courts are limited in their ability to address the consistency mandate, and appellate courts are hampered in their review of this issue, by the lack of a reliable body of data upon which they can rely. *State v. York,* Champaign App. No.2009-CA-03, 2009-Ohio-6263, ¶13. Although a defendant cannot be expected to produce his or her own database to demonstrate the alleged inconsistency, the issue must at least be raised in the trial court and some evidence, however minimal, must be

presented to the trial court to provide a starting point for analysis and to preserve the issue for appeal.

{¶ 68} When the consistency issue is not raised in the trial court, a defendant cannot argue on appeal that the sentence imposed by the trial court was inconsistent with those imposed on similar offenders. *Id.* In the *Miller* case, the defendant failed to raise the consistency issue at sentencing and did not present any evidence below about similar offenders and their sentences. As a result, he forfeited his ability to raise the issue on appeal. *Id.;* see also *State v. Cantrell,* Champaign App. No. 2006 CA 35, 2007-Ohio-6585, ¶10-14; *Rollins,* supra, 2009-Ohio-899, at ¶16."

{¶ 69} A review of the sentencing hearing in this case reveals that Parker did not raise the consistency issue and did not present any evidence about similar offenders and their sentences. As a result, Parker has forfeited his ability to raise the consistency issue on direct appeal. *Miller.*

{¶ 70} Parker's fourth assignment of error is overruled.

Fifth Assignment of Error

{¶ 71} "Because the trial court's sentence imposes an unnecessary burden on government resources it is contrary to law."

{¶ 72} Parker relies on R.C. 2929.13(A), which provides that, except for certain offenses not involved here, and absent a mandated sentence, "a court that imposes a sentence upon an

offender for a felony may impose any sanction or combination of sanctions on the offender that are provided in sections 2929.14 to 2929.18 of the Revised Code. *The sentence shall not impose an unnecessary burden on state or local government resources."* (Emphasis added.)

{¶ 73} Parker argues that the aggregate 15-year sentence the court imposed on him imposes an unnecessary burden on governmental resources. We are not required to resolve that issue, however. Having sustained Parker's second and third assignments of error, we will modify the trial court's sentence to impose concurrent instead of consecutive terms. That resolution renders this assignment of error moot, and we exercise our discretion to decline to decide the error assigned. App.R. 12(A)(1)(c).

{¶ 74} Parker's fifth assignment of error is overruled.

Sixth Assignment of Error

{¶ 75} "Because the trial court improperly employed the 'sentencing package' doctrine, the appellant's sentence is contrary to law."

{¶ 76} Parker argues that in sentencing him the trial court improperly employed the "sentencing package" doctrine to achieve a particular overall lengthy sentence which, in effect, considers the multiple offense as one group in order to impose an omnibus sentence for the group of offenses to satisfy the purposes and

principles of felony sentencing in R.C. 2929.11. The Ohio Supreme Court, however, rejected the doctrine in *State v. Saxon,* 109 Ohio St.3d 176, 2006-Ohio-1245. The state responds that Parker's sentencing-package argument is misplaced because that doctrine is a rule that applies only to appellate review of sentences imposed for multiple offenses and not to the trial court's actual imposition of those sentences. A review of the Ohio Supreme Court's decision in *State v. Saxon*, paragraph two of the syllabus, readily reveals that there is no merit in the state's contention.

{¶77} In *State v. Bradley*, Champaign App. No. 06CA31, 2008-Ohio-720, at ¶19-32, we discussed the sentencing-package doctrine as follows:

{¶78} "Bradley argues that, in addition, the trial court's rationale for imposing harsher sentences, to achieve a particular aggregate sentence, violates the prohibition against sentence-packaging announced in *State v. Saxon,* 109 Ohio St.3d 176, 2006-Ohio-1245. We approved the trial court's rationale in our decision of December 7, 2007. However, on reconsideration, we agree with Bradley.

{¶79} "The defendant in *Saxon* was convicted on his negotiated pleas of guilty of two counts of gross sexual imposition, R.C. 2907.05, one a fourth degree felony and the other a felony of the third degree because of the age of the victim. The trial court

imposed a sentence of four years on each count, to be served concurrently. On appeal, the defendant challenged the sentence for the fourth degree felony. The appellate court held that the trial court erred, because the maximum sentence for a fourth degree felony is eighteen months. R.C. 2929.14(A)(4). The court of appeals then vacated the sentences imposed for both the third and fourth degree felonies and remanded the case for resentencing.

{¶ 80} "The state appealed, arguing that the court of appeals erred when it also vacated the four-year sentence for the third degree felony, which the trial court is authorized by R.C. 2929.14(A)(3) to impose. The Supreme Court agreed, and held:

{¶ 81} "'1. A sentence is the sanction or combination of sanctions imposed for each separate, individual offense.

{¶ 82} "'2. The sentencing-package doctrine has no applicability to Ohio sentencing laws: the sentencing court may not employ the doctrine when sentencing a defendant and appellate courts may not utilize the doctrine when reviewing a sentence or sentences.

{¶ 83} "'3. An appellate court may modify, remand, or vacate only a sentence for an offense that is appealed by the defendant and may not modify, remand, or vacate the entire multiple-offense sentence based upon an appealed error in the sentence for a single offense.' *Id.,* Syllabus by the Court.

{¶ 84} "Writing for the court in *Saxon,* Justice O'Connor explained that the 'sentencing package' doctrine is employed in federal courts and is a product of the Federal Sentencing Guidelines, which require federal courts to consider the sanctions imposed on multiple offenses as the components of a single, comprehensive sentencing plan. Therefore, 'an error within the sentencing package as a whole, even if only on one of multiple offenses, may require modification or vacation of the entire sentencing package due to the interdependency of the sentences for each offense.' *Id.,* at ¶ 6. For that purpose, a federal appellate court has the authority to vacate all sentences, even if only one is reversed on appeal. *Id.,* citing § 2106, Title 28, U.S. Code.

{¶ 85} "In contrast, and with respect to the particular error the court of appeals in *Saxon* committed, R.C. 2953.08(G)(2) authorizes Ohio's courts of appeals to 'increase, reduce, or otherwise modify *a* [felony] sentence that is appealed under this section,' or to 'vacate the sentence and remand the matter to the sentencing court for resentencing' if the sentence is contrary to law. Limiting the court's authority in that respect to the particular sentence tainted by error corresponds to R.C. 2929.14(A)(1)-(5), which sets out the range of available terms '(f)or *a* felony' of each degree concerned. 'The statute makes no provision for grouping offenses together and imposing a single,

"lump" sentence for multiple felonies.' *Saxon,* ¶8. (Emphasis supplied). The *Saxon* court further stated:

{¶ 86} "'Although imposition of concurrent sentences in Ohio may appear to involve a "lump" sentence approach, the opposite is actually true. Instead of considering multiple offenses as a whole and imposing one, overarching sentence to encompass the entirety of the offenses as in the federal sentencing regime, a judge sentencing a defendant pursuant to Ohio law must consider each offense individually and impose a separate sentence for each offense. See R.C. 2929.11 through 2929.19. Only after the judge has imposed a separate prison term for each offense may the judge then consider in his discretion whether the offender should serve those terms concurrently or consecutively. See *State v. Foster,* 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, paragraph seven of the syllabus, ¶100, 102, 105; R.C. 2929.12(A); *State v. Mathis,* 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, paragraph three of the syllabus. Under the Ohio sentencing statutes, the judge lacks the authority to consider the offenses as a group and to impose only an omnibus sentence for the group of offenses.

{¶ 87} "' This court has never adopted the sentencing-package doctrine, and we decline to do so now. The sentencing-package doctrine has no applicability to Ohio sentencing laws: *the sentencing court may not employ the doctrine when sentencing a*

*defendant, and appellate courts may not utilize the doctrine when reviewing a sentence or sentences.* (Emphasis supplied.)' * * *

{¶ 88} "'Because the sentencing judge must consider each individual offense, the logical conclusion is that a "sentence" is the sanction or combination of sanctions imposed for each offense. Adopting the sentencing-package doctrine ignores the critical differences between the Ohio and federal sentencing schemes and implies that sentencing judges must disregard the law and focus on the entire array of offenses when imposing sentence. Ohio law has no mechanism for such an approach. Because Ohio does not "bundle" sentences, nothing is "unbundled" when one of several sentences is reversed on appeal.'

{¶ 89} "Justice O'Connor further pointed out that R.C. 2929.01(F)(F) defines a sentence as 'the sanction or combination of sanctions imposed by the sentencing court on an offender who is convicted of or pleads guilty to an offense,' and that the 'combination' to which that section refers are those sanctions imposed on a single offense, such as a fine and incarceration. Justice Pfeifer filed a dissenting opinion, and viewed R.C. 2929.01(F)(F) as defining a sentence to mean the entire combination of sanctions imposed on an offender."

{¶ 90} Parker argues that the trial court's own statements at sentencing demonstrate that it employed the sentencing-package

doctrine, that is, the court considered Parker's multiple offenses as a single group in order to impose a particular overall and more lengthy sentence for the group of offenses in order to achieve a particular purpose. We agree.

{¶ 91} At the sentencing hearing, the prosecutor told the trial court that he had talked to the victim and that she had said that she is in love with Parker and believes that, regardless of the sentence imposed, they will each wait for each other so that when the sentence is completed they can be together. The prosecutor argued that in order to protect this victim from further emotional harm, give her closure, and allow her to recover and move on with her life, the court's sentence "has to crush that fantasy that they are going to be together." The prosecutor also stated:

{¶ 92} "I'd ask you to look at his actions as a whole, the emotional damage that he's done, and I'd ask you to pass a sentence that protects the victim, that protects his family, protects the community and punishes him for it."

{¶ 93} In imposing its sentence in this case, the trial court stated:

{¶ 94} "The prosecutor is exactly right; I don't want there to be any glimmer of hope after today that somebody is going to wait for somebody. I want there to be finality today. I want it to be over with. I want the harm to stop.

{¶ 95} "I don't want Mr. Parker to harm any other children, and I don't want any other teachers in this community to think that they can engage in this behavior and walk away with a light sentence."

{¶ 96} We agree that the trial court's own statements at sentencing demonstrate that it was motivated by a desire to achieve a particular purpose and ensure that this victim would not wait for Parker to complete his sentence so they could have a future together, and to that end the court sought to impose a particular overall and more lengthy sentence to cover the group of offenses to satisfy the purposes and principles of sentencing. In so doing, the trial court applied the sentencing-package doctrine and therefore erred. Any doubt in that regard is resolved by the fact that the court imposed three different terms for the same offenses, involving much the same conduct. The reason for doing that was to achieve the result that *Saxon* forbids.

{¶ 97} Parker's sixth assignment of error is sustained.

Seventh Assignment of Error

{¶ 98} "Because all four counts of sexual battery are allied offenses of similar import, the trial court erred in imposing sentences, let alone consecutive sentences, on all four counts of the indictment."

{¶ 99} Parker argues that the trial court erred by failing to

merge all four counts of sexual battery for purposes of sentencing because they are allied offenses of similar import.

{¶ 100} R.C. 2941.25 states:

{¶ 101} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

{¶ 102} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

{¶ 103} In its most recent pronouncement on allied offenses, the Ohio Supreme Court in *State v. Johnson*, ___ Ohio St.3d ___, 2010-Ohio-6314, held that when determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered. Id. at syllabus. The Supreme Court further stated:

{¶ 104} "In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense *and* commit the other with the same conduct, not whether it is possible to commit one

*without* committing the other. *Blankenship,* 38 Ohio St.3d at 119, 526 N.E.2d 816 (Whiteside, J., concurring) ('It is not necessary that both crimes are always committed by the same conduct but, rather, it is sufficient if both offenses *can be* committed by the same conduct. It is a matter of possibility, rather than certainty, that the same conduct will constitute commission of both offenses.' [Emphasis sic]). If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import.

{¶ 105}    "If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.' *Brown,* 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, at ¶50 (Lanzinger, J., dissenting).

{¶ 106}    "If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged.

{¶ 107}    "Conversely, if the court determines that the commission of one offense will *never* result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge."  (*Johnson* at

¶48-51).

{¶ 108} The four counts of sexual battery in this case stem from two separate incidents. On January 1, 2010, Parker digitally penetrated the victim's vagina (count one) and performed cunnilingus on her (count two). On January 9, 2010, Parker once again digitally penetrated the victim's vagina (count three) and performed cunnilingus on her (count four).

{¶ 109} Because the same statutory offense, committed multiple times, can be committed with the same conduct, the multiple offenses that result are allied offenses of similar import for purposes of R.C. 2941.25(A). Their merger is required unless, per R.C. 2941.25(B), the offenses were committed separately or with a separate animus.

{¶ 110} As it is used in R.C. 2941.25(B), "animus" means animus malus, or evil intent. Parker's intent when he engaged in sexual activity with the victim was his own, and perhaps the victim's, sexual gratification. Conduct to obtain either result, when prohibited by R.C. 2903.07(A), is evil or wrong. Parker's offenses were not committed with a separate animus as to each.

{¶ 111} Counts one and two do not merge with counts three and four because the sexual conduct involved occurred on separate dates, January 1, 2010, and January 9, 2010, and accordingly those offenses were "committed separately." R.C. 2941.25(B); *Johnson,*

___ Ohio St.3d ___, 2010-Ohio-6314, at ¶51. The further issue that remains is whether count one should merge with count two and count three should merge with count four. We have previously held that allied offenses involving distinct, different kinds of sexual activity each constitute a separate crime and do not require merger, even when they are committed in the course of the same encounter. *State v. Garrison*, Greene App. No. 2003CA67, 2004-Ohio-3567, at ¶6, citing *State v. Grant*, Montgomery App. No. 19824, 2003-Ohio-7240, at ¶59, citing *State v. Nicholas* (1993), 66 Ohio St.3d 431.

{¶ 112}     R.C. 2907.01(A) defines sexual conduct as follows:

{¶ 113}     "(A) 'Sexual conduct' means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse."

{¶ 114}     On each of two separate occasions, January 1 and 9, 2010, Parker engaged in two different, distinct types of sexual conduct with this victim, digital penetration of her vagina and cunnilingus. Digital penetration of the victim's vagina does not result in cunnilingus, and vice versa. Because these offenses

involve different, distinct types of sexual activity, they each constitute a separate crime and their merger is not required by R.C. 2941.25. *Garrison; Grant; Nicholas.*

{¶ 115}    Parker's seventh assignment of error is overruled.

Conclusion

{¶ 116}    Having sustained Parker's second assignment of error, in part, and his third and sixth assignments of error, we will exercise the discretion conferred on us by R.C. 2953.08(G)(2) to modify the trial court's judgment.  The four sentences imposed for each offense will remain unchanged, but  the four sentences will be served concurrently instead of consecutively.  The aggregate sentence Parker must serve will then be five years instead of fifteen.  As thus modified, the judgment of the trial court will be affirmed.

Judgment affirmed

as modified.

FAIN and DONOVAN, JJ., concur.