**[Cite as *State v. Lambert*, 2019-Ohio-2837.]**

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CHAMPAIGN COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2018-CA-28 |
| | : | |
| v. | : | Trial Court Case No. 2018-CR-35 |
| | : | |
| DYLAN W.G. LAMBERT | : | (Criminal Appeal from |
| | : |  Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 12th day of July, 2019.

. . . . . . . . . .

JANE A. NAPIER, Atty. Reg. No. 0061426, Champaign County Prosecutor's Office, Appellate Division, 200 North Main Street, Urbana, Ohio 43078
    Attorney for Plaintiff-Appellee

APRIL F. CAMPBELL, Atty. Reg. No. 0089541, 545 Metro Place South, Suite 100, Dublin, Ohio 43017, and BRADLEY KOFFEL, Atty. Reg. No. 0062184, 1801 Watermark Drive, Suite 350, Columbus Ohio 43215
    Attorneys for Defendant-Appellant

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} Dylan W.G. Lambert appeals from a judgment convicting him of aggravated vehicular homicide and aggravated vehicular assault and sentencing him to maximum and consecutive prison terms totaling 120 months. The judgment of the trial court will be affirmed.

### Factual and Procedural Background

{¶ 2} A Champaign County grand jury indicted Lambert on two first-degree misdemeanor counts of operating a vehicle under the influence of alcohol, a drug of abuse, or a combination of them; one second-degree felony count of aggravated vehicular homicide; one third-degree felony count of aggravated vehicular homicide; three third-degree felony counts of aggravated vehicular assault; and three fourth-degree felony counts of vehicular assault. The charges stemmed from a November 3, 2017 collision in which Lambert, then 27 years old, was driving a car that struck another vehicle while attempting to pass that vehicle by crossing a double-yellow line. The collision caused the other car to roll over in a ditch, seriously injuring the minor driver and killing the 15-year-old passenger.[1] Testing after the collision showed Lambert to have a blood alcohol content of .232 grams per milliliter.

{¶ 3} Lambert was released on an own-recognizance bond, subject to conditions including that he comply with orders of the pretrial services department and that he not consume alcohol or drive a motor vehicle while the case remained pending. (Doc. #8, pp. 1, 3). On June 6, 2018, Lambert entered guilty pleas to the Count Four third-degree felony

---

[1] Injuries to a passenger in Lambert's own car led to the additional assault counts. (*See* Sentencing Hearing Tr., p. 53).

charge of aggravated vehicular homicide (for the death of the passenger in the other car) and the Count Six third-degree felony charge of aggravated vehicular assault (for the injuries to the driver of the other car), in exchange for dismissal of the other eight counts. (*See* Plea Hearing Tr., pp. 7-27). At the outset of that hearing, the trial court found Lambert "guilty" of a bond violation for failure to appear for or call to reschedule a pretrial services appointment. (*Id.*, pp. 2-5). On that issue, the court further advised Lambert as follows:

> The court would encourage you very strongly not to miss another Pretrial Services's [sic] appointment. A person's conduct while on bond * * * is something that the Court considers as a sentencing factor. It doesn't mean it dominates. And it doesn't mean that it is a minimal factor. Just a tool that the Court uses. * * *

(*Id.*, pp. 5-6).

{¶ 4} Before accepting Lambert's guilty pleas, the trial court conducted a plea colloquy to assure that Lambert understood the rights that he was waiving and the consequences of his pleas. The court informed Lambert that the Court Four offense of aggravated vehicular homicide carried "a maximum [term of] imprisonment of 60 months and a maximum fine of $10,000," plus "a mandatory driver's license suspension of not less than three years up to life suspension." (*Id.*, p. 12). As to the Count Six offense of aggravated vehicular assault, the court advised Lambert of the "maximum [sentence of] 60 months in prison," the "maximum fine of $10,000," and the "mandatory driver's license suspension of not less than two years and no more than ten years," but clarified that "[u]nlike the aggravated vehicular homicide, the aggravated vehicular assault carries with

it mandatory imprisonment." (*Id.*, pp. 12-13). "That means that the Court must select a definite sentence on Count Six of 12 months, 18 months, 24 months, 30 months, 36 months, 42 months, 48 months, 54 months, or 60 months." (*Id.*, p. 13).

**{¶ 5}** The trial court told Lambert that he could receive maximum consecutive sentences totaling 120 months of prison time and a $20,000 fine (*id.*, p. 14), and that because the court would "be required to impose a prison term on Count Six," it would "be unlikely that the Court would give you anything else but prison on Count Four." (*Id.*, pp. 15-16). Lambert indicated his understanding of each of the court's advisory statements. He also signed a written plea agreement that repeated the same information. (Doc. #35). The court continued the matter for sentencing memoranda from the parties and a presentence investigation ("PSI").

**{¶ 6}** On July 23, 2018, the trial court sentenced Lambert to the maximum sentences of 60 months for both aggravated vehicular assault and aggravated vehicular homicide, to be served consecutively for a total prison term of 120 months; a lifetime driver's license suspension for the aggravated vehicle homicide; fines of $1,000 for each offense, for a total of $2,000; plus costs. Before doing so, the court reviewed the PSI, the sentencing memoranda, and written statements from Lambert's and the victims' families, and also heard oral statements from the injured driver of the other car and the family of the victim killed in the accident. Both orally at the sentencing hearing and in its written judgment entry, the trial court set forth its reasoning for imposing maximum consecutive sentences.

**{¶ 7}** Lambert appeals, asserting two assignments of error:[2]

---

[2] Although Lambert places these two arguments under a single "Assignment of Error"

1) The trial court's decision to impose consecutive sentences should be vacated; and

2) There is clear and convincing evidence that the record does not support the trial court's imposition of the maximum sentence, and [Lambert's] sentences are also contrary to law.

### *Standard of Review*

{¶ 8} In reviewing felony sentences, appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2), rather than an abuse of discretion standard. *See State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 9. Under R.C. 2953.08(G)(2), an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it "clearly and convincingly" finds either (1) that the record does not support certain specified findings or (2) that the sentence imposed is contrary to law.

{¶ 9} In determining the sentence for an individual offense, the trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing a maximum or more than minimum sentence. *State v. King*, 2013-Ohio-2021, 992 N.E.2d 491, ¶ 45 (2d Dist.). However, in exercising its discretion, a trial court must consider the statutory criteria that apply to every felony offense, including those set out in R.C. 2929.11 and R.C. 2929.12. *State v. Leopard*, 194 Ohio App.3d 500, 2011-Ohio-3864, 957 N.E.2d 55, ¶ 11 (2d Dist.), citing *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶ 38.

---

asserting that his sentences "should be reversed" (*see* Appellant's Brief, p. v), they raise distinct issues that we will address separately.

**{¶ 10}** R.C. 2929.11 requires trial courts to be guided by the overriding purposes of felony sentencing. Those purposes are "to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A). The court must "consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." *Id.* R.C. 2929.11(B) further provides that "[a] sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing * * *, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders."

**{¶ 11}** In general, it is presumed that prison terms will be served concurrently. R.C. 2929.41(A); *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 16, 23 ("judicial fact-finding is once again required to overcome the statutory presumption in favor of concurrent sentences"). However, after determining the sentence for a particular crime, a sentencing judge has discretion to order an offender to serve individual counts of a sentence consecutively to each other or to sentences imposed by other courts. R.C. 2929.14(C)(4) permits a trial court to impose consecutive sentences if it finds that (1) consecutive sentencing is necessary to protect the public from future crime or to punish the offender, (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and (3) any of the following applies:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

### *Assignment of Error Regarding Maximum Sentences*

{¶ 12} Lambert maintains that the trial court erred in multiple respects as to the reasons it gave for imposing maximum sentences in his case. First, he argues that his failure to appear for a pretrial services appointment was not "a bond violation" and therefore should not have been considered as a sentencing factor. Next, he argues that the trial court improperly relied on Lambert's family's history with alcohol as a factor that supported a longer sentence. Lambert also contends that the trial court failed to consider its responsibility "to promote Lambert's rehabilitation," despite rehabilitation's being a required sentencing consideration. Finally, he suggests that as "a first-time offender" who "led a law-abiding life," he should not have been given maximum sentences.

*a. Bond Violation*

{¶ 13} Lambert's arguments do not demonstrate that the maximum sentences imposed by the trial court clearly and convincingly were not supported by the record or were contrary to law. Regardless of whether Lambert's failure to appear for an April 5, 2018 pretrial services appointment constituted "a bond violation,"[3] nothing suggests that the missed appointment significantly influenced the trial court's sentencing decision. With respect to Lambert's conduct while free on bond, the trial court expressed far greater concern that Lambert, by his own admission, had consumed alcohol on at least two occasions, despite being ordered not to do so.

{¶ 14} As a preliminary matter at the time of sentencing, the trial court remarked on the State's having "allege[d] that [Lambert] violated bond by consuming alcoholic beverages." (Sentencing Hearing Tr., p. 5). Through both counsel and his own oral affirmation, Lambert admitted those allegations. (*Id.*, p. 6). The court found Lambert "guilty of violating bond" and indicated that it would consider such violations "as a sentencing factor." (*Id.*).

{¶ 15} Later, when reviewing the statutory sentencing factors, the trial court referred to two exhibits submitted in conjunction with the State's sentencing memorandum. The court noted that one photograph, dated April 27, 2018,[4] depicted

---

[3] Lambert cites our decision in *State v. Springer*, 2015-Ohio-1941, 34 N.E.3d 441 (2d Dist.) in support of his bond violation argument. There, we stated that, "[u]nless otherwise expressed by the trial court, the only condition of an own-recognizance bond is that the defendant appear on the date specified by the court." (Citation omitted.) *Id.* at ¶ 19. The trial court in that case had not informed the defendant that she would be subject to random drug screenings. Here, however, the bond issued by the court *does* expressly order Lambert to "comply with orders given by" the pretrial services department. (Doc. #8, p. 1). Accordingly, the applicability of that case to these facts is tenuous.

[4] Lambert was indicted on February 1, 2018 for the November 3, 2017 collision; his bond entry dated February 14, 2018 ordered Lambert not to consume alcohol. (Doc. #8, p. 3).

Lambert playing a video game and drinking a Coors Light beer while seated next to an infant. (*See* Doc. #38, Exh. 2). The court continued:

> [Trial Court]: And Coors Light was the same beer can found in your vehicle at the time of the accident; is that accurate?
>
> [Lambert]: Yes, Your Honor.
>
> [Trial Court]: And in State's Exhibit 1 at the Wapakoneta Tug Fest, which was held on May 18 and 19 of [2018], it looks like you are drinking a Coors Light; is that accurate?
>
> [Lambert]: Yes, Your Honor.
>
> [Trial Court]: And, again, Coors Light was the same beer can found in your vehicle at the time of the accident; is that right?
>
> [Lambert]: Yes, Your Honor.

(Sentencing Hearing Tr., p. 34).

{¶ 16} The court thereafter engaged in a continuing dialogue with Lambert about Lambert's denial he had an alcohol problem and the court's concern that he did. (*Id.*, pp. 39-41, 43-44). Further, the court explored whether Lambert had been impaired at the time of the accident by some substance other than alcohol:

> [Trial Court]: Is it accurate that from time-to-time you take non-prescribed opiates because of back pain?
>
> [Lambert]: I have, yes, Your Honor.
>
> [Trial Court]: And do you receive these from a friend?
>
> [Lambert]: Yes, Your Honor.
>
> [Trial Court]: And the night of the offense you took a non-prescribed opiate

because of back pain?

[Lambert]: Yes, Your Honor.

[Trial Court]: So not only did we have the alcohol, but you were also taking a non-prescription medication which would have been illegal for you to take, true?

[Lambert]: Yes, Your Honor.

[Trial Court]: Do you understand why the Court believes that your statement that you don't need substance abuse treatment is even worse?

[Lambert]: Absolutely, Your Honor.

(*Id.*, pp. 44-45).

{¶ 17} The court noted that Lambert had two prior juvenile adjudications for underage consumption of alcohol, had one underage consumption of alcohol charge as an adult dismissed after successfully completing a pretrial probation program, and had "continu[ed] to drink alcohol in violation of the Court order not to drink alcohol." (*Id.*, p. 40). Summarizing its findings, the trial court again noted that "on two occasions, and in violation of bond, [Lambert] continued to drink the same type of alcohol that was found in his vehicle at the time of the offense." (*Id.*, pp. 55-56). Only after multiple discussions of Lambert's alcohol and drug use did the trial court make its sole mention of the missed pretrial services appointment, as follows:

[T]he Court finds that [Lambert] violated bond by not only using alcohol on or about April 2018 and May 18 or 19 of 2018, but that he also failed to appear when required by the Court. And that was his April 5 appointment with Pretrial Services and his subsequent telephone directive

to reschedule.

> Defendant's Ohio Risk Assessment Score initially graded out at 13, which was low. It was overwritten by the PSI writer to moderate because the PSI investigator stated that [Lambert] has a criminal history involving alcohol-related offenses. And [Lambert] refuses to admit that he has an issue with alcohol and substance abuse treatment [sic].

(*Id.*, pp. 51-52).

{¶ 18} Given the trial court's extensive focus on Lambert's history of alcohol and drug use and continued use of alcohol, the record does not fail to support the trial court's sentencing findings due simply to the court's isolated reference to Lambert's missed pretrial services appointment.

*b. Family History*

{¶ 19} The trial court's discussion of documented alcohol problems among other members of Lambert's family also does not compel a conclusion that the record fails to support the trial court's sentencing findings. In response to the court's questioning about that family history, Lambert acknowledged that his father "had several OVI charges," his mother had a recent OVI charge, and at least one of Lambert's older brothers also had an OVI record. (Sentencing Hearing Tr., pp. 28-33). Lambert indicated that another older brother, when "underage," had been involved in an accident in which someone was killed; Lambert said he was not sure if alcohol had been involved or whether his brother had served time for that incident. (*Id.*, pp. 28-29).

{¶ 20} Later, the court inquired further on that subject:

[Trial Court]: [D]id the prior OVIs that your mother and father and brother

have make any impact on you?

[Lambert]: I mean, I'm not really connected with my family all that much except for my mother out of the people listed. So as far as anybody else on there, besides my mother, no, it didn't have no impact on me.

[Trial Court]: Did the fact that your brother was involved in an accident, a traffic accident where [a] life was taken, did that have any impact on you?

[Lambert]: Yes, Your Honor. It is something you think about. Absolutely, Your Honor.

(*Id.*, p. 39).

**{¶ 21}** As to the significance of Lambert's family history of issues with alcohol, the trial court later stated:

[T]he Defendant's family history of having three family members with prior OVI convictions and one family member who was involved in a prior accident that claimed human life has not sufficiently made an impact on the Defendant to cause him to modify his behavior[,] as shown in violating bond.

(*Id.*, p. 55). The trial court's inquiry into Lambert's relatives' experiences with alcohol-related offenses provides no basis for us to clearly and convincingly conclude that the record does not support that court's sentencing findings. The record contains no suggestion that the trial court was punishing Lambert for the conduct of others; the trial court plainly articulated its reasoning that Lambert's failure to learn from the past mistakes of others close to him was part of a pattern reflecting a likelihood that Lambert would reoffend. The record does not demonstrate that the court erred in that regard.

*c. Rehabilitation*

{¶ 22} The record also does not support Lambert's contention that the trial court, in imposing maximum sentences, erroneously failed to consider his rehabilitation. The trial court acknowledged that Lambert had "successfully completed a pretrial probation program" for a municipal court charge of underage consumption of alcohol. Nevertheless, the court observed that Lambert had "continu[ed] to drink alcohol," despite the court's order that he refrain from doing so. Furthermore, the record indicates that Lambert resisted the notion that he might benefit from substance abuse treatment.

{¶ 23} We have found that a sentencing court is justified "in giving greater weight to the protection of the public from future offenses that [the defendant] is likely to commit" when the defendant's record "does not demonstrate his amenability to rehabilitation." *State v. Bailey*, 2d Dist. Clark No. 2009-CA-51, 2010-Ohio-2632, *3. The record does not clearly and convincingly fail to support the trial court's findings that Lambert "ha[d] not been rehabilitated to a satisfactory degree after being adjudicated a delinquent child"; had "refuse[d] to acknowledge that he ha[d] demonstrated" a "pattern of alcohol abuse that is related to the offense"; and that he "show[ed] no genuine remorse for the offense." (Sentencing Hearing Tr., p. 54).

*d. First Time Offender*

{¶ 24} We are not persuaded that the trial court's imposition of maximum sentences was unwarranted simply because Lambert was a "first-time offender." We previously have rejected the suggestion that a defendant's status as a first-time offender provides a proper basis for comparison of sentences imposed in different cases. *See State v. Armstrong*, 2d Dist. Champaign No. 2015-CA-31, 2016-Ohio-5263, ¶ 42. "Many factors enter into a sentencing determination in each case, and sentences cannot

reasonably be compared to one another in this manner." (Citations omitted.) *Id.*

**{¶ 25}** In this instance, the trial court appropriately detailed many factors that it found to demonstrate that Lambert's conduct constituted a more serious form of the two offenses to which he had pled guilty. The court enumerated those factors as follows:

[N]umber one, * * * Defendant had a blood alcohol concentration of .232 grams per milliliter in his blood plasma serum.

Secondly, that his blood alcohol concentration [wa]s nearly two and a half times the legal limit of .096 grams per milliliter.

Number three, Defendant has two prior adjudications for underage consumption of alcohol. And as an adult, one prior pretrial probation successful dismissal of a charge for underage consumption of alcohol.

Four, that during the operation of the motor vehicle[,] the Defendant attempted to pass the car containing the two victims on a double yellow line.

Five, that the physical or mental injuries suffered by the victim[s] of the offense, due to the conduct of the Defendant, w[ere] exacerbated because of the age of the victim[s]. Specifically, the deceased passenger victim in the secondary vehicle was 15 years of age. And the severely injured driver victim in the secondary vehicle was 17 years of age.

Six, that the victims in the secondary v[ehicle] suffered death and serious physical harm as a result of the offense.

Seven, the Defendant not only caused injury and death to the two victims in the secondary vehicle, but also caused physical injury to his own passenger.

Eight, the Defendant's intoxication aside, had the Defendant obeyed traffic lane requirements[,] the accident and resulting loss of life and serious injuries to others would never have occurred.

And, nine, the Defendant operated the motor vehicle without being insured to drive a motor vehicle.

(Sentencing Hearing Tr., pp. 52-54).

{¶ 26} The trial court considered the appropriate sentencing criteria under R.C. 2929.11 and R.C. 2929.12, and we cannot say that the record clearly and convincingly fails to support the court's conclusion that the "factors establishing [Lambert]'s conduct [a]s more serious outweigh [the] factors establishing [Lambert]'s conduct [a]s less serious." Neither can we conclude that the record does not support the trial court's findings as to the recidivism factors and Lambert's likelihood to commit future crimes.

{¶ 27} Lambert's assignment of error based on the trial court's imposition of maximum sentences as to both of his offenses is overruled.

### *Assignment of Error Regarding Consecutive Sentences*

{¶ 28} Lambert contends that the trial court erred by considering as a basis for imposing consecutive sentences Lambert's "general course of conduct" rather than just the conduct to which he pled guilty. He also suggests that the court improperly engaged in "sentence packaging" by considering his offenses collectively rather than individually. Further, Lambert again observes that he was "a first-time offender," and argues that he "was not one of the worst offenders for wh[om] consecutive sentences normally are reserved." Based on our review of the record, Lambert's contentions are not well taken.

{¶ 29} In making Lambert's sentences consecutive, the trial court in its written

judgment entry stated as follows:

> Consecutive sentencing is necessary to protect the public from future crime and to punish the Defendant[,] and consecutive sentences are not disproportionate to the seriousness of the Defendant's conduct and to the danger the Defendant poses to the public. **<u>AND</u>**
>
> At least two (2) of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of the courses of conduct adequately reflects the seriousness of the Defendant's conduct.

(Citations omitted.) (Emphasis sic). (Doc. #40, p. 9).

**{¶ 30}** That conclusion tracks the language of R.C. 2929.14(C)(4)(b). As the trial court made the requisite findings before imposing consecutive sentences, our review turns to whether the record clearly and convincingly fails to support those findings.

*a. Course of Conduct*

**{¶ 31}** The record does not demonstrate that the trial court improperly relied on Lambert's "general course of conduct" as "the sole basis for imposing consecutive sentences."[5] (*See* Appellant's Brief, p. 6). Lambert's brief implies that by "general course

---

[5] Notably, the only authority Lambert cites as support for this argument comes from a dissenting opinion in a decision of a different court. *See State v. Hale*, 2014-Ohio-262, 7 N.E.3d 643, ¶ 37-43 (3d Dist.) (Rogers, J., concurring in part and dissenting in part). Even to the extent that opinion may be persuasive on the question of whether criminal history is irrelevant to the statute's requirement that the offenses created a "course of conduct," it is inapposite here, where evidence in the record would support a finding that Lambert's conduct in committing the separate offenses of aggravated vehicular homicide and aggravated vehicular assault while under the influence of alcohol *did* create "a course of conduct that resulted in great or unusual harm" to both the deceased passenger and the

of conduct," he means his own and his family's overall history involving alcohol use, as distinguished from Lambert's actions that led directly to the fatal collision. (*See id.*).

{¶ 32} The trial court's consecutive sentence findings as to Lambert's "courses of conduct" made no mention of Lambert's past conduct, or that of his family, with respect to alcohol. (*See* Doc. #40, p. 9; *see also* Sentencing Hearing Tr., p. 58). As discussed above, in the context of imposing maximum sentences, the trial court did determine that Lambert's failure to moderate his behavior in response to his family's history of OVI offenses, Lambert's own continuing use of alcohol, and his denial of an alcohol problem all suggested that Lambert lacked genuine remorse and posed a continuing danger to the public. (*See* Sentencing Hearing Tr., pp. 55-56). However, the trial court never expressly invoked those same particularized concerns as a basis for imposing consecutive sentences under R.C. 2929.14(C)(4)(b). (*See id.*, p. 58). We nevertheless have examined the record to determine whether we can clearly and convincingly conclude that it fails to support the trial court's R.C. 2929.14(C)(4)(b) findings.

{¶ 33} In order to find that two offenses were part of a single course of conduct, a trial court "must * * * discern some connection, common scheme, or some pattern or psychological thread that ties [the offenses] together." (Brackets sic.) (Citation omitted.) *State v. Sapp,* 105 Ohio St.3d 104, 2004-Ohio-7008, 822 N.E.2d 1239, syllabus.[6] A course of conduct may be established by factual links such as time, location, weapon,

---

seriously injured driver of the other vehicle.

[6] While *Short* and other decisions cited above discussed "course of conduct" in the context of a death penalty specification under R.C. 2929.04(A)(5), we nonetheless have found the analysis there to be instructive as to the meaning of that phrase for purposes of R.C. 2929.14(C)(4)(b). *See State v. Kay*, 2d Dist. Montgomery No. 26344, 2015-Ohio-4403, ¶ 19; *State v. Ramey*, 2015-Ohio-5389, 55 N.E.3d 542, ¶ 87-88 (2d Dist.).

cause of death, or similar motivation. *State v. Short*, 129 Ohio St.3d 360, 2011-Ohio-3641, 952 N.E.2d 1121, ¶ 144, citing *Sapp* at syllabus; *see also State v. Ramey*, 2d Dist. Clark No. 2014-CA-127, 55 N.E.3d 542, 2015-Ohio-5389, ¶ 87. In *Short*, the Supreme Court found that the victims of two separate offenses died as "part of a single course of conduct" by the defendant where the victims "were killed within minutes of each other, at the same address, with the same weapon, and for the same reason." *Id.* at ¶ 145.

**{¶ 34}** More on point, this court previously affirmed that two offenses "were committed as part of [one] course of conduct" for the purpose of consecutive sentencing under R.C. 2929.14(C)(4)(b) where the defendant's convictions for aggravated vehicular homicide and aggravated vehicular assault stemmed from a two-car collision caused when, while operating a vehicle with a suspended license and while impaired by marijuana, the defendant sped through a red light, killing the other driver and paralyzing a passenger in that vehicle. *See State v. Mayberry*, 2014-Ohio-4706, 22 N.E.3d 222, ¶ 31-32 (2d Dist.).[7] Factually, Lambert's case is virtually indistinguishable from *Mayberry* with regard to the single course of conduct underlying the two offenses, in that one victim died and another was severely injured as a consequence of Lambert's actions in disregarding traffic regulations while operating a vehicle without a valid license and when under the influence of alcohol.

**{¶ 35}** In ordering that the maximum sentences for Lambert's two offenses be

---

[7] *Compare Kay* at ¶ 19 (implying that the record did not support a finding that defendant "had engaged in a course of conduct" because her "convictions were based on a single event," not "a spree" of offenses). Still, this court's reversal of the consecutive sentences imposed by the trial court in *Kay* appears to have been premised primarily on the lack of evidence of "great or unusual harm," not the lack of a "course of conduct." *See id.* The *Kay* decision therefore bears little weight under the facts of Lambert's case.

served consecutively, the trial court strictly adhered to the language of R.C. 2929.14(C)(4)(b), finding consecutive sentences "necessary to protect the public from future crime or to punish [Lambert]" and "not disproportionate to the seriousness of [Lambert]'s conduct and to the danger [he] poses to the public," and further finding that the two offenses "were committed as part of one * * * course[ ] of conduct" and the harm caused thereby "was so great or unusual that no single prison term for [either offense] * * * adequately reflects the seriousness of [Lambert]'s conduct." (Sentencing Hearing Tr., pp. 57-58). The court "specifically point[ed] to the seriousness and recidivism factors in support of that as well." (*Id.*, p. 58). The record gives no indication that the court relied on Lambert's prior alcohol offenses to reach that conclusion.[8]

{¶ 36} Because we are unable to conclude that the record clearly and convincingly does not support the trial court's consecutive sentencing findings, we overrule Lambert's assignment of error related to the trial court's "course of conduct" analysis.

*b. "Sentencing Packaging"*

{¶ 37} As to "sentencing packaging," we have held that a trial court may consider whether multiple sentences should be served concurrently or consecutively only *after* the court has "consider[ed] each offense individually and impose[d] a separate sentence for each offense." *State v. Parker*, 193 Ohio App.3d 506, 2011-Ohio-1418, 952 N.E.2d 1159,

---

[8] Furthermore, some authority suggests that a trial court properly may consider a defendant's prior conduct involving the use of alcohol when imposing consecutive sentences for offenses that arise from a single accident during which the defendant was driving while impaired by alcohol. *See State v. Spock*, 8th Dist. Cuyahoga No. 99950, 2014-Ohio-606, ¶ 3-4, 28-30 (affirming consecutive sentences for aggravated vehicular homicide and aggravated vehicular assault under R.C. 2929.14(C)(4)(b) where the court cited defendant's prior "DUI" convictions as part of course of conduct). As the record does not demonstrate that the trial court in Lambert's case relied on such evidence to justify the consecutive sentences it imposed, however, we need not reach that issue.

¶ 86 (2d Dist.), citing R.C. 2929.11 through 2929.19; *see also State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, paragraph seven of the syllabus; *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, paragraph three of the syllabus. Here, the record does not support a conclusion that the trial court imposed "only an omnibus sentence" for Lambert's aggravated vehicular homicide and aggravated vehicular assault convictions, and thus violated the principle against sentencing packaging. *See id.*

{¶ 38} In sentencing Lambert, the trial court separately stated the sentence imposed for each of his individual offenses before pronouncing that such sentences would be served consecutively to one another. (*See* Sentencing Tr., p. 57). Unlike the circumstances in *Parker*, the court did not put forth an improper reason for the length of Lambert's combined sentences. *See Parker* at ¶ 96; *see also State v. Cameron*, 2d Dist. Clark No. 2013-Ohio-4397, ¶ 18 (distinguishing *Parker* because the trial court in *Cameron* "did not express an improper reason for the sentence it imposed"). While the court did suggest that "no amount of time in prison will sufficiently punish" Lambert for the consequences of his vehicular collision (Sentencing Tr., pp. 41-42), the statutory sentencing factors required the court to consider the appropriate length of each sentence before imposing maximum sentences for each offense. *See* R.C. 2929.11(A) (sentencing court to consider purposes of "protect[ing] the public * * * and * * * punish[ing] the offender" and "the need for incapacitating the offender [and] deterring the offender and others from future crime"); R.C. 2929.11(B) (court to consider "the seriousness of the offender's conduct and its impact upon the victim"). The mere fact that the court's sentencing analysis employed language similar to that of R.C. 2929.14(C)(4)(b), the statute

governing consecutive sentences, does not mean that the court improperly imposed an "omnibus" sentence, especially given the similarities between the language of R.C. 2929.11(A) and (B) and that of R.C. 2929.14(C)(4)(b). *See State v. Fields*, 10th Dist. Franklin No. 16AP-417, 2017-Ohio-661, ¶ 20 (commenting on "high degree of overlap" between sections of sentencing statutes and concluding that trial court made necessary findings regardless of specific statutory language used).

*c. First-Time Offender*

**{¶ 39}** Finally, the record does not compel a conclusion that Lambert's status as a "first-time offender" offset the seriousness of his offenses, which resulted in the death of a 15-year-old and serious injury to a 17-year-old. *Compare State v. Watkins*, 2d Dist. Clark No. 10CA0088, 2011-Ohio-2979, ¶ 14 (where this court set aside maximum, consecutive sentences imposed against first-time offender whose kidnapping victim "was subjected to degrading behavior, but suffered no physical harm").

**{¶ 40}** Based on the record, the trial court's consecutive sentence findings are not clearly and convincingly unsupported by the record or contrary to law. Lambert's assignment of error challenging the consecutive sentences imposed by the trial court is overruled.

### Conclusion

The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and TUCKER, J., concur.

Copies sent to:

Jane A. Napier
April F. Campbell
Bradley Koffel
Hon. Nick A. Selvaggio