[Cite as *State v. Burnette*, 2022-Ohio-3251.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2021-CA-48 |
| | : | |
| v. | : | Trial Court Case No. 2021-CR-200 |
| | : | |
| JEFFREY RUSSELL BURNETTE | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 16th day of September, 2022.

. . . . . . . . . . .

KEVIN S. TALEBI, Atty. Reg. No. 0069198, Champaign County Prosecutor's Office, 200
North Main Street, Urbana, Ohio 43078
       Attorney for Plaintiff-Appellee

APRIL F. CAMPBELL, Atty. Reg. No. 0089541, 504 Metro Place South, Suite 100, Dublin,
Ohio 43017
       Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

**{¶ 1}** Defendant-Appellant, Jeffrey Russell Burnette, appeals from his conviction on one count of aggravated vehicular homicide, a second-degree felony, and one count of operating a vehicle under the influence of alcohol, a first-degree misdemeanor.

**{¶ 2}** On May 11, 2022, Burnette's assigned counsel filed a brief under the authority of *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), indicating there were no issues with arguable merit to present on appeal. Counsel raised two potential assignments of error. The first is that the trial court erred in accepting Burnette's guilty plea under Crim.R. 11; the second is that the court erred in sentencing Burnette. However, counsel found no arguable merit in either claim.

**{¶ 3}** On May 12, 2022, we ordered that the record be supplemented with the presentence investigation ("PSI") report, the victim impact statements, and any other records the trial court reviewed for sentencing. We also notified Burnette that his counsel had found no meritorious claims for review and gave him until July 11, 2022, to file a pro se brief assigning any errors. Burnette did not file a pro se brief. In addition, the State did not file a brief.

**{¶ 4}** After reviewing the entire record, including the PSI report, and conducting our independent *Anders* review, we find no issues with arguable merit for Burnette to advance on appeal. Accordingly, Burnette's counsel will be permitted to withdraw, and the judgment of the trial court will be affirmed.

I.   Facts and Course of Proceedings

{¶ 5} On September 16, 2021, Burnette was involved in an accident that caused the death of Charles Rutan, Jr. A complaint was initially filed in the Champaign County Municipal Court on September 17, 2021, charging Burnette with aggravated vehicular homicide and reckless homicide. On September 24, 2021, Burnette waived his right to a preliminary hearing and asked that the case be bound over to the Champaign County Common Pleas Court.

{¶ 6} On October 4, 2021, an indictment was filed charging Burnette with the following crimes: (1) aggravated vehicular homicide in violation of R.C. 2903.06(A)(1)(a)/(B)(2)(a), a second-degree felony; (2) aggravated vehicular homicide in violation of R.C. 2903.06(A)(2)(a)/(B)(3), a third-degree felony; (3) operating a vehicle under the influence of alcohol, a drug of abuse, or a combination of them (OVI), in violation of R.C. 4511.19(A)(1)(a)/(G)(1)(a), a first-degree misdemeanor; and (4) operating a vehicle under the influence of alcohol, a drug of abuse, or a combination of them in violation of R.C. 4511.19(A)(1)(g)/(G)(1)(a), a first-degree misdemeanor.

{¶ 7} Counsel was appointed for Burnette, and he initially pled not guilty on October 7, 2021. Subsequently, Burnette pled guilty on November 4, 2021, pursuant to a plea agreement. Under the agreement, Burnette would plead guilty to count one of the indictment (aggravated vehicular homicide, a second-degree felony) and count three (OVI, a first-degree misdemeanor). In exchange, the State agreed to dismiss the other charges and to recommend a PSI report. If Burnette had no further criminal record other than what had been known or disclosed in the parties' respective discovery packets, the State further agreed to recommend at sentencing a minimum of six years imprisonment

on count one.   Transcript of Plea Hearing ("Tr.1"), p. 3.   The parties also agreed that the State would not be bound by its recommendation if other criminal history were discovered. The State would also not be bound if Burnette committed additional offenses while on bond or after entering a plea, or if he violated a bond condition.   *Id.*

{¶ 8} After the court informed Burnette of his rights under Crim.R. 11, Burnette pled guilty, and the court accepted his plea.   Tr.1 at p. 29-52.   The signed written plea agreement and entry finding Burnette guilty and dismissing counts two and four were filed on November 5, 2021.   On December 3, 2021, the State filed a lengthy sentencing memorandum, which outlined the facts of the crime and discussed Burnette's history. The State recommended a six-year prison sentence for the aggravated vehicular homicide conviction. [1]   On December 6, 2021, Burnette filed his own sentencing memorandum in which he requested an indefinite sentence of three years to four and a half years, which would include a concurrent sentence for the misdemeanor conviction.

{¶ 9} At the sentencing hearing, the court stated that it had reviewed the PSI report, which included four victim impact statements.   Tr. 2 at p. 2.   The court also said it had reviewed a DVD containing four separate camera views of the accident and had reviewed the sentencing memoranda as well.   *Id.*   The prosecutor and one of the individuals who had made a victim impact statement then spoke.

{¶ 10} The prosecutor remarked that she had learned something from the PSI report that was not necessarily readily apparent from the investigation, which was that Burnette had struggled significantly with alcohol abuse for the majority of his life.   At the

---

[1] At the sentencing hearing, the State corrected this clerical error to a six-year minimum prison term.   Transcript of Sentencing Hearing ("Tr. 2") (Dec. 9, 2021), p. 4-5.

time of the collision, Burnette's blood alcohol level was over three times the legal limit, but he showed no effect, as he was able to get out of his vehicle and interact with officers. According to Burnette, his own father was an alcoholic and all his brothers had abused alcohol, which pointed to a family predilection. Burnette had two prior OVI convictions in the late 1980s, and while that had been some time ago, Burnette had not done any recommended outpatient treatment or heeded his wife's warnings about his alcohol problems. Burnett, therefore, never had treatment for alcohol abuse. Tr.2 at p. 4-6.

{¶ 11} Charles Rutan's daughter spoke next, expressing her family's grief and sorrow and discussed Rutan's life. Tr.2 at p. 7-9. At that point, Burnette's attorney addressed the court and reiterated Burnette's request for a minimum sentence of three years and a maximum of four and a half years. Tr.2 at p. 10. The attorney also stressed Burnette's life-long struggle with alcohol, which began in 1982 while he was in the Navy. *Id.* In addition, the attorney noted that, as reflected in the PSI report, Burnette had lost a family member to the actions of a drunk driver in 1983, and that Burnette had genuine remorse for the crime. Tr.2 at p. 11 and 26. Finally, Burnette spoke briefly, apologized, and expressed remorse. Tr.2 at p. 13.

{¶ 12} After hearing from the parties, the trial court discussed at length the factors that influenced the sentence. Tr. 2 at p. 14-30. The court noted that videos revealed that the roadway was dry, and the sun was behind Burnette, meaning that no environmental issues affected Burnette's situation. Tr.2 at p. 16-17. The court discussed the high rate of speed; the high level of alcohol in Burnette's system; the fact that Burnette's demeanor at the scene had been described as argumentative; and that

Burnette had refused medical treatment and had refused to give a urine sample.   Tr.2 at p. 17-19 and 23.   Burnette also agreed with the court that his own acknowledgement of "drinking a pint of liquor a day to the PSI writer and drinking a pint of vodka a day" suggested that Burnette was "perhaps a functioning alcoholic."   Tr.2 at p. 19.   (The court later corrected this to reflect that Burnette reported to the PSI investigator that he drank a pint of vodka every other day.   Tr.2 at p. 21.   However, Burnette did state to the PSI investigator that he started drinking at noon on the day of the accident and had consumed a pint of vodka.   *See* PSI Report, p. 9.)

{¶ 13} In this regard, the court stressed that Burnette had been working as a driver for U.S. Express for 10 years and that the same level of usage of alcohol over that time indicated that Burnette's functioning alcoholism enabled him to drink and drive.   Thus, the court attributed minimal weight to the sentencing factor that Burnette had led a law-abiding life for a significant number of years.   Tr.2 at p. 20.

{¶ 14} In addition, the court stressed the accident's circumstances, which included Burnette's passing "an operational restaurant filled with patrons and staff" at 7:30 p.m., passing four gas pumps, and then beginning to pass a convenience store where a person was parked in a car.   Tr.2 at p. 22.   Burnette then passed that occupied vehicle, hit Rutan's vehicle, and caused Rutan to hit a third vehicle.   Burnette narrowly missed hitting the restaurant, gas pumps, convenience store, and patrons located outside near the parking spots.   Tr.2 at p. 22-23.   Rutan also did not enter Burnette's path of travel, as he had finished backing up at the gas pump and was proceeding forward when his car was hit.   Tr.2 at p. 23.

{¶ 15} Furthermore, the court noted that, contrary to Burnette's statement that he was trying to avoid a deer, the video indicated no evasive maneuvering on Burnette's part, nor was there any skid mark denoting a decision to stop. Instead, Burnette hit Rutan's vehicle "head-on," "[n]o swerving, no braking. No slowing down." Tr.2 at p. 24-25.

{¶ 16} After discussed some other matters, the court imposed a mandatory lifetime driver's license suspension, a total fine of $3,500, a minimum term of eight years up to a maximum of 12 years in prison on count one, and the maximum sentence of six months in the Tri-County Regional Jail on the misdemeanor conviction. The misdemeanor conviction was to run concurrent with the sentence for count one. The court also imposed a mandatory period of post-release control for up to three years, but no less than 18 months. Tr.2 at p. 30-37.

{¶ 17} On December 9, 2021, the court filed a lengthy judgment entry reflecting what occurred at the sentencing hearing. *See* Journal Entry of Judgment, Conviction and Sentence ("Entry") (Dec. 9, 2021), p. 1-13. Burnette timely appealed his convictions.

## II. Discussion

{¶ 18} In an *Anders* review, we are required to decide "after a full examination of all the proceedings," whether an appeal is "wholly frivolous." *Anders*, 386 U.S. at 744, 87 S.Ct. 1396, 18 L.Ed.2d 493. *See also Penson v. Ohio*, 488 U.S. 75, 84-85, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988). Issues are not frivolous simply because the State "can be expected to present a strong argument in reply." *State v. Pullen*, 2d Dist. Montgomery

No. 19232, 2002-Ohio-6788, ¶ 4. Instead, an issue will lack arguable merit "if on the facts and law involved, no responsible contention can be made that it offers a basis for reversal." *Id.*

**{¶ 19}** After conducting an independent review of the record pursuant to *Anders*, we agree with Burnette's appellate counsel that, based on the facts and relevant law, there are no issues with arguable merit to present on appeal. Before reaching this conclusion, we reviewed the entire record, including the PSI report, the hearing transcripts, and the videos of the accident.

## A. Compliance with Plea Requirements

**{¶ 20}** As noted, Burnette's first potential assignment of error is that the trial court failed to comply with Crim.R. 11. In accepting pleas, courts must comply with various items outlined in Crim.R. 11(C), including that the defendant is making the plea "voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing." Crim.R. 11(C)(2)(a). The court also must advise defendants of the effect of the plea and that they are waiving various constitutional rights. *See* Crim.R. 11(C)(2)(b) and (3).

**{¶ 21}** Our review reveals that the trial court fully complied with the requirements of Crim.R. 11, and there is no arguable merit in this assignment of error.

## B. Error in Sentencing

{¶ 22} Counsel raised a second potential issue about sentencing but could find no arguable merit in that alleged error.   We agree.

{¶ 23} When appellate courts review felony sentences, they must apply the standards found in R.C. 2953.08(G)(2).   Under that statute, we may increase, reduce, or modify a sentence, or vacate it altogether and remand for resentencing, if we clearly and convincingly find that the record fails to support certain specified findings or that the sentence is contrary to law.

{¶ 24} In *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, the Supreme Court of Ohio "clarified an appellate court's review of a felony sentence under R.C. 2953.08(G)(2)."   *State v. Litteral*, 2d Dist. Clark No. 2021-CA-10, 2022-Ohio-1187, ¶ 21.   In *Jones*, the court stressed that "[n]othing in R.C. 2953.08(G)(2) permits an appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12."   *Jones* at ¶ 9.

{¶ 25} Consequently, under *Jones*, when we review "felony sentences that are imposed solely after considering the factors in R.C. 2929.11 and R.C. 2929.12, we shall no longer analyze whether those sentences are unsupported by the record.   We simply must determine whether those sentences are contrary to law."   *State v. Dorsey*, 2d Dist. Montgomery No. 28747, 2021-Ohio-76, ¶ 18.   In this vein, we stressed in *Dorsey* that " '[a] sentence is contrary to law when it does not fall within the statutory range for the offense or if the trial court fails to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors set forth in R.C.

2929.12.' " *Id.*, quoting *State v. Brown*, 2017-Ohio-8416, 99 N.E.3d 1135, ¶ 74 (2d Dist.).

{¶ 26} Here, the sentences were within the statutory ranges for the respective convictions. *See* R.C. 2929.14(A)(2)(a) (penalties for second-degree felonies), and R.C. 4511.19(G)(1)(a) (penalties for violations of R.C. 4511.19(A)(1)(a)). A trial court "has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences." *State v. King*, 2013-Ohio-2021, 992 N.E.2d 491, ¶ 45 (2d Dist.). Furthermore, while the misdemeanor sentence was the maximum sentence, there is no requirement for courts to make " 'any particular finding before imposing the authorized maximum sentence.' " *State v. Curtis*, 2d Dist. Miami No. 2021-CA-19, 2022-Ohio-1691, ¶ 22, quoting *State v. Loffing*, 2d Dist. Clark No. 2021-Ohio-CA-44, 2022-Ohio-408, ¶ 9.

{¶ 27} During the sentencing hearing, the court gave many reasons for its findings and also indicated it had considered the appropriate factors under R.C. 2929.11 and R.C. 2929.12. Tr2. at p. 30. The court repeated its analysis in the judgment entry, which included specific references to these statutes. *See* Entry at p. 3-6. Thus, the court did not fail to consider the purposes and principles of sentencing, and any suggestion otherwise would be frivolous.

{¶ 28} Burnette's counsel suggested that a question might arise concerning the court's examination of Burnette's family history with alcohol issues and whether the court could use that to make inferences about Burnette's alcohol use. However, counsel rejected that theory based on a prior decision of our court. Appellant's Brief at p. 5, citing *State v. Lambert*, 2d Dist. Champaign No. 2018-CA-28, 2019-Ohio-2837. *Lambert*

involved a vehicular homicide caused by the defendant's alcohol intoxication, and the trial court similarly discussed the defendant's alcohol use and family history. *Id.* at ¶ 16-20.

{¶ 29} In that situation, we commented as follows:

The trial court's inquiry into Lambert's relatives' experiences with alcohol-related offenses provides no basis for us to clearly and convincingly conclude that the record does not support that court's sentencing findings. The record contains no suggestion that the trial court was punishing Lambert for the conduct of others; the trial court plainly articulated its reasoning that Lambert's failure to learn from the past mistakes of others close to him was part of a pattern reflecting a likelihood that Lambert would reoffend. The record does not demonstrate that the court erred in that regard.

*Id.* at ¶ 21.

{¶ 30} This is the same situation that occurred here. There is no indication in the record that the trial court tried to punish Burnette for others' conduct. The court did ask Burnette why he failed to pursue more aggressive treatment in light of his father's level of alcohol consumption and abuse and his brother's death to a drunk driver in 1983. However, the court also stressed that it did not place a great deal of weight on the fact that Burnette had failed to pursue treatment after having two OVIs in the late 1980s. The court remarked that, at the time, "OVIs weren't looked at in the same manner that they are today." The court therefore found those OVI violations and lack of treatment should not be reviewed through the lens of 2021. Tr. 2 at p. 27-28.

{¶ 31} Instead, the court stressed it would place more emphasis on the past ten years, when Burnette had used alcohol significantly while having a career as a driver. The court was concerned because this indicated that Burnette felt he was capable of driving as a functioning alcoholic, when he was not.  Tr.2 at p. 28.  The court also mentioned that it gave minimal weight to the fact that Burnette had led a law-abiding life for many years because Burnette's "functioning alcoholism" enabled him to drink and drive.  Tr.2 at p. 20.

{¶ 32} As in *Lambert*, there is no basis for clearly and convincing finding that the record does not support the sentencing findings.  Any argument to that effect is wholly frivolous.


III.   Conclusion

{¶ 33} We have reviewed the potential assignments of error raised by Burnette's appellate counsel and have performed our duty under *Anders* to conduct an independent review of the record.  After a thorough review, we have found no issues with arguable merit for Burnette to advance on appeal.  Accordingly, appellate counsel's motion to withdraw is granted, and the judgment of the trial court is affirmed.

. . . . . . . . . . . . .


DONOVAN, J. and LEWIS, J., concur.

Copies sent to:

Kevin S. Talebi
April F. Campbell
Hon. Nick A. Selvaggio